UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SPRING MATHEWS, et al.,

          Plaintiffs,

    v.

CITY OF OAKLAND POLICE
DEPARTMENT, et al.,

          Defendants.

Case No. 12-cv-03235-JCS

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 41

## I.   INTRODUCTION

On January 26, 2011, City of Oakland Police Officer Richard McNeely ("McNeely") shot and killed Martin Anthony Flenaugh II ("Flenaugh") following a high-speed car chase. Plaintiffs Spring Mathews (mother of Flenaugh, "Mathews"), Martin Flenaugh, Sr. (father of Flenaugh, "Flenaugh Sr."), Kamarty Deandre Flenaugh (son of Flenaugh and minor represented by his guardian ad litem Teresa Hill, sister of Flenaugh, "Kamarty"), and the estate of Martin Anthony Flenaugh II ("Estate") bring this action against the City of Oakland Police Department ("City") and McNeely. Plaintiffs allege violation of civil rights under 42 U.S.C. § 1983, wrongful death, negligence, intentional infliction of emotional distress, violation of California Civil Code Section 52.1, and battery. *See* Second Am. Compl. ¶¶ 10–30 ("SAC"). They seek general and punitive damages. *See id.* at 8.

Defendants bring a motion for summary judgment ("Motion") seeking dismissal of all claims. *See* Defs.' Mot. for Summ. J. or, in the Alternative, Partial Summ. J. ("Mot."). The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). A hearing on the Motion was held on Friday, November 8, 2013 at 9:30 a.m. For the reasons stated below, the Motion is GRANTED IN PART AND DENIED IN PART.

## II.    BACKGROUND

### A.    Factual Background

Pursuant to the Court's Standing Orders, the parties submitted a Joint Statement of Undisputed Material Fact Re: Defendants' Motion for Summary Judgment ("JSUF"). *See* Dkt. No. 42. The parties agree to the following facts: Flenaugh was a front-seat passenger in a maroon four-door Infiniti that was involved in a police chase in the City of Oakland on January 26, 2011. JSUF, No. 1 (citing Decl. of Richard McNeely in Supp. of Defs.' Mot. ¶¶ 7–9 ("McNeely Decl."); Decl. of Martin Ziebarth in Supp. of Defs.' Mot. ¶ 4 ("Ziebarth Decl.")). The police chase ended when that car was involved in a collision at the intersection of 85th Avenue and San Leandro Street. JSUF, No. 2 (citing McNeely Decl. ¶ 9; Ziebarth Decl. ¶ 4). Following the collision, Flenaugh exited the car. JSUF, No. 3 (citing McNeely Decl. ¶ 13; Ziebarth Decl. ¶ 9). A fire ignited in the engine compartment of the car. JSUF, No. 4 (citing McNeely Decl. ¶ 10, Ex. A (photograph of engine fire)). Flenaugh was shot multiple times by McNeely. JSUF, No. 5 (citing McNeely Decl. ¶ 17). After Flenaugh was shot by McNeely, two officers moved him. JSUF, No. 6 (citing Decl. of Ellen C. Dove in Opp'n to Mot. ("Dove Decl.")). Medical assistance for Flenaugh was summoned after he was shot. JSUF, No. 7 (citing Decl. of Regina Harris-Gilyard in Supp. of Defs.' Mot. ¶¶ 8–9 ("Harris-Gilyard Decl."), Ex. A (City Incident Recall for Incident No. 110126000767, requested July 17, 2013). Paramedics from American Medical Response ("AMR") arrived at the scene of the shooting and provided medical treatment to Flenaugh. JSUF, No. 8 (citing McNeely Decl. ¶ 18; Ziebarth Decl. ¶ 12).

The rest of the facts surrounding these events are in dispute. These disputed facts can be divided generally into the following phases: (1) Lockwood Street shooting and car chase; (2) car crash; (3) driver Jereme Brown ("Brown") and Flenaugh's exit from the car and McNeely's shooting of Flenaugh; and (4) officers' moving of Flenaugh after he was shot and provision of medical assistance.

### 1.    Lockwood Street shooting and car chase

The parties appear to agree that sometime during the late afternoon of January 26, 2011, Brown and Flenaugh were in the Lockwood neighborhood of Oakland. *See* Decl. of Jereme Brown

in Opp'n to Mot. for Summ. J. ("Brown Decl."); Mot. at 3 (citing McNeely ¶¶ 3–8; Ziebarth Decl. ¶ 4). The parties also appear to agree that shortly after shots were fired in the Lockwood area, Brown and Flenaugh drove away from the area in a maroon Infiniti, and a car chase ensued. *See* JSUF, No. 1; Mot. at 3 (citing McNeely ¶¶ 3–8; Ziebarth Decl. ¶ 4); Brown Decl. ¶ 4. However, the parties appear to dispute the reasons that Brown and Flenaugh drove away.

According to Plaintiffs, the maroon Infiniti belonged to Deangelo Austin ("Austin") who, at some prior point, had asked Flenaugh "to switch cars with him that day." Brown Decl. ¶ 3. Brown stated that sometime in the late afternoon, Brown drove Austin's car to the Lockwood neighborhood with Flenaugh in the passenger seat. *Id.* ¶ 4. Brown stated that "[w]hen we arrived [at the Lockwood neighborhood] some person or persons started shooting at us." *Id.* He stated that "[r]ight away we saw police cars, and we thought it was the police who were shooting at us." *Id.* He stated that "[w]e wanted to get out of there as quickly as possible, and I sped off." *Id.* He stated that "[t]he police chased us for some time; we remained in fear for our lives." *Id.* ¶ 5.

According to Defendants, several gunshots were fired in the area of Lockwood Street and 78th Avenue in Oakland, shortly after 4:00 p.m. Mot. at 3 (citing Ziebarth Decl. ¶ 3). Defendants assert that "[t]wo suspects in the shooting, later identified as [] Brown and [] Flenaugh, fled the area" of the shooting in a maroon Infiniti and "led Oakland police on a high speed chase." *Id.* (citing McNeely ¶¶ 3–8; Ziebarth Decl. ¶ 4).

### 2.   Car crash

The parties agree that the chase ended when the car containing Flenaugh was involved in a collision at the intersection of 85th Avenue and San Leandro Street. JSUF, No. 2 (citing McNeely Decl. ¶ 9; Ziebarth Decl. ¶ 4). The parties appear to agree that after the collision, the car spun around, hit a fence and stopped. *See* Opp'n to Mot. for Summ. J. ("Opp'n") at 10 (citing Brown Decl. ¶ 5); McNeely Decl. ¶ 11. The parties also appear to agree that the collision resulted in substantial damage to the car. *See* Opp'n at 1; Brown Decl. ¶ 6; Mot. at 4 (citing Ziebarth Decl. ¶¶ 12–13). For example, the parties agree that the front passenger-side door was largely torn off. *See* McNeely Decl. ¶ 12; Brown Decl. ¶ 6. The parties agree that a fire ignited in the engine compartment of the car, but they dispute the size and danger of the fire. *See* Mot. at 4 (citing

3

1   JSUF, No. 4; McNeely Decl. ¶¶ 12–13; Harris-Gilyard Decl. Ex. A; Ziebarth Decl. ¶ 5).

2          According to Plaintiffs, the fire "was not more than a small fire" and the officers "did not

3   cordon [the area] off to preclude the many civilians who were gathering . . . ." Opp'n at 3.

4   Plaintiffs allege that officers did tell an eyewitness "to stop filming but did not mention stay away

5   because of danger from fire." *Id.* (citing Dove Decl. Ex. 8 (Excerpts of Dep. of Robert Reyno at

6   110:7–9) ("Reyno Dep.")). Plaintiffs also allege that an officer used a hand extinguisher to put out

7   the fire, but that he did not do so immediately. *Id.* (citing Dove Decl. Ex. 9-A).

8          According to Defendants, the car "burst into flames" after the crash. McNeely Decl. ¶ 11;

9   Ziebarth Decl. ¶ 5. *See also* Stewart Decl. ¶ 5 ("car was burning badly" by time shooting was

10  over).

11                 **3.      Exit from car and shooting**

12         The parties agree that after the collision, Flenaugh exited the car and McNeely shot

13  Flenaugh multiple times. JSUF, No. 5 (citing McNeely Decl. ¶¶ 13, 17; Ziebarth Decl. ¶ 9). The

14  parties appear to agree that Flenaugh exited the car first. *See* Brown Decl. ¶ 8; McNeely Decl.

15  ¶ 15. *But see* Stewart Decl. ¶ 4 (stating that Brown exited first). However, the parties dispute many

16  of the other facts relating to Flenaugh's exit from the car and McNeely's shooting of Flenaugh.

17  Most significantly, the parties dispute the position of Flenaugh's hands when he exited the vehicle

18  and whether he was holding or pointing any guns.

19         According to Plaintiffs, Flenaugh "got out of the car with his hands in a normal position,"

20  and he was not holding any guns. Opp'n at 3 (citing Decl. of Celester Winston in Supp. of Opp'n

21  at 1:24–28, 2:1–6 ("Winston Decl.")), 4 (citing Brown Decl. ¶ 6). Brown stated that he watched

22  Flenaugh run "into the street" without any guns. Brown Decl. ¶¶ 6, 8. Brown stated that he then

23  "ran to the right along the sidewalk." *Id.* ¶ 6. Brown stated that he did not hear any warning or

24  other instructions from McNeely. Opp'n at 4, 8 (citing Brown Decl. ¶ 6). Celester Winston

25  ("Winston"), an eyewitness, also stated that he did not hear an officer shouting anything. Winston

26  Decl. at 2:13. Brown stated that "as soon as he started to run he heard gunshots, at least three of

27  them." Brown Decl. ¶ 6. Brown stated that he did not see Flenaugh fall after being shot and that

28  Brown was apprehended at the next business driveway. *Id.* ¶¶ 7, 8. Winston stated that Flenaugh

United States District Court
Northern District of California

1    "did not have a gun in his right hand and did not point anything at the officer." *See* Winston Decl.

2    at 2:15–16. Winston stated that he saw Flenaugh's body flinch as the shots hit him, and Flenaugh

3    fell to the ground. *Id.* at 2:10–11, 16.

4         According to Defendants, Flenaugh emerged from the car "armed with two guns," one in

5    each hand. Mot. at 4 (citing McNeely Decl. ¶ 17); Ziebarth Decl. ¶ 9. Joshua Stewart ("Stewart"),

6    an eyewitness, stated that when McNeely got out of his car, he noticed Flenaugh was holding a

7    gun. Stewart Decl. ¶ 4. McNeely stated that he shouted to Flenaugh "something to th[e] effect" of

8    "let me see your hands!" McNeely Decl. ¶ 16. *See* Mot. at 4 (citing McNeely Decl. ¶¶ 16, 17–18;

9    Ziebarth Decl. ¶ 10; Stewart Decl. ¶ 4). Stewart stated that McNeely yelled, "Freeze! Police!

10   Stop!" Stewart Decl. ¶ 4. Defendants assert that Flenaugh did not comply with any commands.

11   Mot. at 4 (citing McNeely Decl. ¶¶ 16, 17–18; Ziebarth Decl. ¶ 10; Stewart Decl. ¶ 4). McNeely

12   stated that instead, Flenaugh looked at him, "turned to his left, and moved a few steps towards the

13   front of the [car]." McNeely Decl. ¶ 17. McNeely stated that it was at this point that he saw

14   Flenaugh holding a gun in each hand. *Id.* McNeely stated that he drew his firearm "just as Mr.

15   Flenaugh turned and pointed a gun directly at me." *Id.* ¶ 18. Defendants assert that McNeely,

16   "[f]earing for his life, . . . fired his gun six times in rapid succession at Mr. Flenaugh," and

17   Flenaugh fell to the ground. Mot. at 4 (citing McNeely Decl. ¶ 19; Ziebarth Decl. ¶ 10; Stewart

18   Decl. ¶ 4). McNeely stated that as he shot at Flenaugh, he saw Flenaugh drop a gun from his left

19   hand and continue to hold a gun in his right hand. Dep. of Richard McNeely at 91:25–92:1

20   ("McNeely Dep.").

21              **4.      Events after shooting**

22        The parties appear to agree that Officer Ziebarth ("Ziebarth") handcuffed Flenaugh after he

23   was shot. *See* Opp'n at 2 (citing Ziebarth Decl. ¶ 11). The parties agree that officers then moved

24   Flenaugh. *See* JSUF, No. 6 (citing Dove Decl.). The parties also agree that medical assistance for

25   Flenaugh was summoned and that AMR paramedics provided medical treatment to Flenaugh. *See*

26   JSUF, Nos. 7, 8 (citing Harris-Gilyard Decl. ¶¶ 8–9; JSUF, Ex. A; McNeely Decl. ¶ 18; Ziebarth

27   Decl. ¶ 12). However, the parties disagree about why Flenaugh was moved, whether any guns

28   were found on or near Flenaugh before he was moved, whether CPR was performed, whether CPR

United States District Court
Northern District of California

5

was appropriate, and whether medical assistance was timely summoned. *See* Mot. at 4; Opp'n at 2.

According to Plaintiffs, Flenaugh did not have any guns in his hands or his clothes, and no guns were nearby. *See* Opp'n at 2; Winston Decl. at 2:17–18 ("I did not notice any officer kicking a gun away from [Flenaugh]"). Plaintiffs assert that Flenaugh was dragged along the ground three times before he received medical attention. *See* Opp'n at 2 (citing Reyno Dep. at 77:12–14). Mathews and Tammy Hill ("Hill") stated that they watched news coverage where Flenaugh was "dragged around." Decl. of Spring Mathews in Supp. of Opp'n ¶ 2 ("Mathews Decl."); Decl of Tammy Hill in Supp. of Opp'n ¶ 5 ("Hill Decl."). Robert Reyno ("Reyno"), an eyewitness, stated that he saw Flenaugh's "lifeless" body first being dragged to a point "about five feet away from the car," then another approximately ten feet to a point "close to the curb," and finally "on the street close to the intersection." Reyno Dep. at 74:7–10, 21, 76:11–15, 78:24–25, 79:1–5. Plaintiffs assert that there was no reason for dragging Flenaugh away from the car because the fire was small. Opp'n at 3. Reyno stated that he did not see any officer performing CPR on Flenaugh, and that by the time the paramedics arrived, Flenaugh's body had already been covered with a tarp. Reyno Dep. at 76:24–25, 77:12–17. Plaintiffs assert that if any CPR that was administered, it was inappropriate and harmed Flenaugh because he had been shot in the chest. *See id.* at 2, 9. Plaintiffs assert that officers did not summon medical assistance in a timely way and that they prevented the paramedics from reaching Flenaugh. *See id.* at 2. Reyno estimated that the paramedics arrived within five minutes of the shooting. Reyno Dep. at 77:1–11.

According to Defendants, officers moved Flenaugh away from the car because the car was on fire. Mot. at 4 (citing McNeely Decl. at ¶ 4; Ziebarth Decl. ¶ 11; Stewart Decl. ¶ 5). McNeely stated that as other officers moved Flenaugh away from the car, McNeely saw a gun fall out of Flenaugh's clothing. McNeely Dep. 95:14–96:19. Defendants assert that after Flenaugh was moved, Officer Martin Burch performed CPR on Flenaugh until the paramedics arrived. Mot. at 4 (citing McNeely Decl. ¶ 20; Ziebarth Decl. ¶ 12; Decl. of Joshua Murphy in Supp. of Defs.' Mot. ¶ 8 ("Murphy Decl.")). Defendants assert that medical attention was summoned "[w]ithin minutes of the shooting." Mot. at 4 (citing Harris-Gilyard Decl. ¶¶ 8–9). Joshua Murphy ("Murphy"), one of the AMR paramedics summoned to the scene, stated that AMR received the call at

1    approximately 4:20 p.m. and that he arrived with other paramedics at approximately 4:26 p.m.

2    Murphy Decl. ¶¶ 4, 6. Murphy stated that as he approached to provide medical assistance, officers

3    were performing CPR on Flenaugh. *Id.* ¶ 8. By checking Flenaugh's vital signs and using a cardiac

4    monitor, Murphy determined that Flenaugh was dead. *Id.* ¶¶ 10, 11.

5          The parties did not submit evidence regarding who recovered guns from the scene or from

6    which locations on the scene they were recovered. However, they do appear to agree that guns

7    were recovered from the scene of the shooting. *See, e.g.*, Opp'n at 5, 6 (discussing "recovered

8    guns"), 13 (referring to Ziebarth as officer who took "initial control of the weapons claimed to

9    have been attributed to [Flenaugh]"); Reply at 6 (discussing "recovered pistols").

10         **B.     Procedural Background**

11              **1.     Complaint**

12         Plaintiffs allege seven causes of action: (1) wrongful death, brought by Kamarty against

13   Defendants; (2) wrongful death, brought by Mathews and Flenaugh Sr. against Defendants; (3)

14   violation of civil rights under 42 U.S.C. § 1983 based on (a) use of excessive force under the

15   Fourth Amendment, (b) violation of due process under the Fifth Amendment, (c) wanton or

16   negligent use of force under the Eighth Amendment, and (d) discrimination under the Fourteenth

17   Amendment, brought by the Estate against McNeely; (4) negligence, brought by Plaintiffs against

18   Defendants; (5) intentional infliction of emotional distress ("IIED"), brought by Plaintiffs against

19   Defendants; (6) violation of California Civil Code Section 52.1 ("Bane Act"), brought by the

20   Estate against McNeely; and (7) battery, brought by the Estate against McNeely. *See* SAC ¶¶ 10–

21   30. They seek general and punitive damages. *Id.* at 8.

22              **2.     Motion for Summary Judgment**

23         Defendants move for summary judgment seeking dismissal of all of Plaintiffs' claims,

24   arguing the following: **(1)–(2) the wrongful death claims** fail because (a) McNeely's use of force

25   was reasonable and (b) there is no evidence that Flenaugh was deprived of medical treatment and

26   medical assistance was promptly summoned by officers; **(3) the 42 U.S.C. § 1983 claims** fail

27   because (a) as to the Fourth Amendment claim, the use of force by McNeely against Flenaugh was

28   objectively reasonable; (b) as to the Fifth Amendment claim, the Due Process Clause of the Fifth

United States District Court
Northern District of California

Amendment applies only to actions of the federal government; (c) as to the Eighth Amendment claim, the Eighth Amendment only applies to persons convicted of a crime; (d) as to the Fourteenth Amendment Equal Protection claim, there is no evidence that Defendants acted in a discriminatory manner, and any Fourteenth Amendment excessive force claim is barred as a matter of law by the U.S. Supreme Court's holding in *Graham v. Connor*, 490 U.S. 386 (1989); **(4) the negligence claims** fail because (a) the use of force by McNeely was reasonable under the circumstances and there is no evidence that moving Flenaugh or providing CPR to him after he was shot exacerbated his condition, and (b) there is no statute subjecting public entities to direct liability for negligence; **(5) the IIED claims** fail because Mathews, Flenaugh Sr., and Kamarty lack standing under California law to sue for IIED, and there is no statute subjecting public entities to direct liability for IIED; **(6) the Bane Act claim** fails as matter of law because there is no evidence of interference with Flenaugh's rights under state or federal law by threats, intimidation or coercion; and **(7) the battery claim** fails because the force used by McNeely was reasonable as a matter of law. *See* Mot. at 4–17. Defendants also argue that McNeely and the City are immune from liability under state law for McNeely's use of deadly force against Flenaugh because the use of force constituted a justifiable homicide. *See id.* at 11.

### 3.    Opposition

Plaintiffs argue that the Motion should be denied because issues of material fact remain in dispute. Specifically, they assert that disputed issues include: (1) whether Flenaugh had a gun in his hands when he was shot; (2) whether the guns found at the scene of the Lockwood Street shooting or at the scene of Flenaugh's shooting are linked to Flenaugh; (3) whether McNeely gave a warning to Flenaugh before shooting; and (4) whether officers administered CPR to Flenaugh effectively. *See* Opp'n at 3–14. Plaintiffs also oppose Defendants' arguments that certain claims should fail as a matter of law, *i.e.*, claims based on 42 U.S.C. § 1983 regarding the Fifth, Eighth, and Fourteenth Amendments, negligence, IIED, the Bane Act, and battery. *See id.* at 14–24. Plaintiffs also submitted a separate Statement of Disputed Facts. *See* Dkt. No. 65.

### 4.    Reply

Defendants reiterate arguments that the Motion should be granted because (1) Plaintiffs fail

United States District Court
Northern District of California

to present evidence sufficient to create a triable issue of fact as to whether (a) the force used by McNeely was reasonable, (b) Flenaugh was deprived of necessary medical treatment, and (c) Defendants discriminated against Flenaugh because of his race; (2) the claims based on the Fifth, Eighth, and Fourteenth Amendments, negligence, IIED, and the Bane Act fail as a matter of law; and (3) Mathews, Flenaugh Sr., and Kamarty lack standing to pursue the IIED claims.

## III.   EVIDENTIARY RULINGS

In ruling on a motion for summary judgment, the Court may only consider evidence that is admissible. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Rule 56(c) of the Federal Rules of Civil Procedure allows parties to object to evidence cited to support or dispute a fact.

Defendants argue that the Motion should be granted because Plaintiffs have presented no admissible evidence to establish a genuine issue of material fact. Defendants object to much of Plaintiffs' evidence on numerous bases, including improper form, lack of foundation, irrelevance, improper opinion testimony, inadmissible hearsay, failure to disclose witnesses, lack of personal knowledge, improper character evidence, and violation of the best evidence rule. *See* Defs.' Reply to Opp'n to Mot. at 1–4 ("Reply").[1] Plaintiffs have responded to Defendants' evidentiary objections in a supplemental filing. *See* Dkt. No. 74 ("Pls.' Resp.").[2]

For the purposes of ruling on the Motion, the Court makes the evidentiary rulings described below. However, the Court declines to rule on all of Defendants' objections at this time because it resolves the Motion based on the evidence that it finds admissible.

### A.   Declaration of Jereme Brown

Defendants' objection to Brown's declaration is "that it contains irrelevant matter, improper character evidence and inadmissible hearsay." Reply at 4 (citing Fed. R. Evid. 402, 404,

---

[1] Defendants also object to Plaintiffs' Statement of Disputed Facts on the ground that it violates a local rule. *Id.* at 4 (citing N.D. Civ. L. R. 7-3, 7-4). The Court finds that Plaintiffs' statement was submitted in violation of the page limits established by the local rules cited by Defendants. Accordingly, Dkt. No. 65 is stricken.

[2] Although Plaintiffs did not seek leave of the Court to make this filing pursuant to Local Rule 7-3(d), the Court exercises its discretion to consider Plaintiffs' arguments therein.

United States District Court
Northern District of California

801–802). Plaintiffs respond that "Brown saw [] Flenaugh seconds after [] McNeely shot and killed him. Decedent did not have gun [sic] on his person and Brown can so testify. There is no improper matter or irrelevant matter that rises to the level one should consider striking. The Magistrate is capable of distinguishing whether it contains any inadmissible hearsay; this declaration is not being presented to a jury during the MSJ [sic] process." Pls.' Resp. ¶ 19.

A "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Defendants assert that the declaration "contains" certain inadmissible matter, but they have not specified which matter they believe is inadmissible. *See* Reply at 4. The Court finds that the following paragraphs of Brown's declaration are relevant, not improper character evidence, and not inadmissible hearsay, because they describe the disputed events leading up to Flenaugh's shooting, and they are based on Brown's personal knowledge: ¶¶ 1, 2 (only first sentence), 3, 4, 5, 6 (excluding fourth sentence beginning "I cannot . . ."), 7, 8 (only first sentence). Defendants' objection is OVERRULED IN PART AND SUSTAINED IN PART.

## B.   Declaration of Celester Winston

Defendant's objection to Winston's declaration is that "Plaintiffs failed to disclose Celester Winston as a witness pursuant to [Rules 26 and 37(c)(1) of the Federal Rules of Civil Procedure], or in their responses to interrogatories. This evidence is also objected to on the ground it contains irrelevant matter, improper opinion and inadmissible hearsay." Reply at 2 (citing Fed. R. Evid. 402, 701, 801–802). Plaintiffs respond that "Defendants included Mr. Wilson [sic] in their Rule 26 disclosure wherein they provided the Crime Report and declined to list any individuals mentioned therein to separately provide their name, contact information or what they might testify about. Plaintiffs obtained the statement from him after discovery closed but learned of him from the police report defendants supplied and relied upon in their initial disclosure. Plaintiffs should be able to call upon any nonemployee witnessed [sic] listed by defendants in their Rule 26 disclosures. They submitted a declaration from Joshua Stewart without providing current and sufficient contact information and plaintiffs were unable to contact him to seek a declaration or

United States District Court
Northern District of California

1    corroborate his." Pls.' Resp. ¶ 10.

2         Rule 37 of the Federal Rules of Civil Procedure provides that a court may exclude

3    undisclosed evidence as a sanction for failing to disclose witnesses. *Krzesniak v. Cendant Corp.*, C

4    05-05156 MEJ, 2007 WL 1795703, at *5 (N.D. Cal. June 20, 2007) (citing Fed. R. Civ. P. 37).

5    "[H]owever, a court has discretion to impose 'other appropriate sanctions,' either in addition to or

6    instead of exclusion." *Krzesniak*, 2007 WL 1795703, at *5 (quoting Fed. R. Civ. P. 37(c)(1)).

7    "Even undisclosed evidence should not be excluded 'if the parties' failure to disclose the required

8    information is substantially justified or harmless.'" *Krzesniak*, 2007 WL 1795703, at *5 (quoting

9    *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); Fed. R. Civ. P.

10   37(c)(1)).

11        Here, Defendants were aware of Winston because they disclosed his existence in the police

12   reports produced during discovery. Defendants have also provided no argument as to why this

13   non-disclosure has prejudiced them. Accordingly, the Court finds that Plaintiffs' non-disclosure of

14   Winston was harmless. Specifically, the Court finds that Winston's declaration is admissible

15   except for: 2:19–20 (only full sentence); 2:27–3:2 (starting at sentence beginning "While . . .").

16   Defendants' objection is OVERRULED IN PART AND SUSTAINED IN PART.

17        **C.    Declaration of Spring Mathews**

18        Defendants' objection to Mathew's declaration is that she "lacks personal knowledge of

19   the matters asserted therein and it is argumentative, lacks foundation, contains inadmissible

20   hearsay, violates the best evidence rule and is improper in form." Reply at 3 (citing Fed. R. Evid.

21   602, 611, 701, 801–802 and 1002; N.D. Civ. L. R. 7-5). Plaintiffs respond that Mathew's

22   declaration "recites the events and things she witnessed and include those which are in her

23   personal knowledge. If it is argumentative, that is not a reason to strike it." Pls.' Resp. ¶ 16.

24        Local Rule 7-5(b) provides that "declarations may contain only facts, must conform as

25   much as possible to the requirements of Fed. R. Civ. P. 56(e), and must avoid conclusions and

26   argument. Any statement made upon information or belief must specify the basis therefor. An

27   affidavit or declaration not in compliance with this rule may be stricken in whole or in part."

28        Mathews' declaration contains some facts that reflect her personal knowledge, *e.g.*, what

United States District Court
Northern District of California

11

she saw on television. To the extent that her declaration is relevant for the purposes of determining whether Mathews has standing to pursue the IIED claim and whether officers dragged Flenaugh on the street, it is admissible. Specifically, the Court finds that the following paragraphs of Mathews' declaration are admissible: ¶¶ 1–5, 6 (only first and fourth sentences), 7 (excluding last sentence), 8 (only first sentence), 9–10. Defendants' objection is OVERRULED IN PART AND SUSTAINED IN PART.

> ### D.      Declaration of Tammy Hill

Defendants' objection to Hill's declaration is that she "lacks personal knowledge of the matters asserted therein and it contains irrelevant matters, improper character evidence, inadmissible hearsay, lacks foundation and violates the best evidence rule." Reply at 3 (citing Fed. R. Evid. 402, 404, 602, 701, 801–802, 901, 1002). Plaintiffs respond that Hill's declaration "recites the events and things she observed and witnessed and include those which are in her personal knowledge." Pls.' Resp. ¶ 17.

As with Mathews' declaration, Hill's declaration contains some facts that reflect her personal knowledge. To the extent that her declaration is relevant for the purposes of determining whether Kamarty (through his guardian ad litem Hill) has standing to pursue the IIED claim and whether officers dragged Flenaugh on the street, it is admissible. Specifically, the Court finds that the following paragraphs of Hill's declaration are admissible: ¶¶ 1 (first through third sentences only), 3 (excluding last sentence), 4, 5 (excluding last three words of last sentence), 6 (only first and third sentences). Defendants' objection is OVERRULED IN PART AND SUSTAINED IN PART.

> ### E.      Deposition of Robert Reyno

Defendants' objection to Reyno's deposition excerpts is "that it is improper in form and lacks foundation." Reply at 1–2 (citing Fed. R. Evid. 901; *Orr*, 285 F.3d at 774; N.D. Civ. L. R. 7-5(a); Cal. Code Civ. Proc. § 2025.540(b)). Plaintiffs respond that "The excerpts from the deposition of Robert Reyno were taken from a transcript emailed to plaintiffs. The original is in the possession of defendants as they took the deposition and should have received that some time back. Defendants have a copy of the deposition transcript and can verify the accuracy of the

United States District Court
Northern District of California

12

excerpts. They have thus far declined to lodge that original with the Court so the Magistrate can review them in the original form. Plaintiffs have an electronic copy of the whole deposition and can submit it if the Court wants to see more and defendants elect not to lodge their original." Pls.' Resp. ¶ 8.

The Court declines to rule on Defendants' objection as to this evidence. However, it notes that even if it considered the purported testimony of Reyno, the Court would not change its decisions below.

### F.      Photographs of Scene of Crash and Shooting

Defendants' objection to Exhibit 9 of Dove's declaration, which is comprised of purported photographs of the scene of the crash and the shooting, is that "it lacks foundation." Reply at 2 (citing Fed. R. Evid. 901). Plaintiffs respond that the exhibit "has selected photographs provided to plaintiffs by defendant in discovery. They are true and correct copies of the digital images provided by defendants, the originals and negatives of which have been withheld. Defendants object to the introduction of photographs they provided to plaintiffs with their disclosures, now doubting their authenticity. This is quite a position considering plaintiffs wanted to see the negatives, contact prints, metadata when the CD was compiled or anything to authenticate the order of the pictures and verify no new photos were inserted into the collection and no photos were subtracted from the collection." Pls.' Resp. ¶ 9.

The Court declines to rule on Defendants' objection as to this exhibit. However, it notes that even if it considered the purported photographs as evidence, the Court would not change its decisions below.

## IV.    ANALYSIS

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made

United States District Court
Northern District of California

1   this showing, the burden then shifts to the party opposing summary judgment to designate

2   "specific facts showing there is a genuine issue for trial." *Id.* On summary judgment, the court

3   draws all reasonable factual inferences in favor of the non-movant. *Scott v. Harris*, 550 U.S. 372,

4   378 (2007).

### A.     Federal Civil Rights Claims: 42 U.S.C. § 1983

6       Section 1983 provides "a method for vindicating federal rights elsewhere conferred."

7   *Graham*, 490 U.S. at 393–94 (citation omitted)). Thus, analysis of a civil rights claim brought

8   under § 1983 begins with the identification of the "specific constitutional right allegedly infringed

9   by the challenged application of force." *Id.* at 394 (citation omitted). The claim is then evaluated

10  under the constitutional standards that apply to that constitutional right. *Id.* (citing *Tennessee v.*

11  *Garner*, 471 U.S. 1, 7–22 (1985)). The Estate brings § 1983 claims against McNeely under the

12  Fourth, Fifth, Eighth, and Fourteenth Amendments.

### 1.     Standing

14      Although neither party raises the issue, the Court addresses standing as a preliminary

15  matter. Generally, Fourth Amendment rights are personal and may not be vicariously asserted.

16  *Alderman v. United States*, 394 U.S. 165, 174 (1969). However, in § 1983 actions, "survivors of

17  an individual killed as a result of an officer's excessive force may assert a Fourth Amendment

18  claim on that individual's behalf if the relevant state's law authorizes a survival action." *Moreland*

19  *v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). Under California law, a

20  survival action may be commenced by the decedent's personal representative. Cal. Code Civ.

21  Proc. § 377.30. Here, Mathews has filed a petition to the Alameda Superior Court to become

22  Flenaugh's personal representative and Plaintiffs assert that the petition has been granted. *See* Dkt.

23  No. 79 at 4 (Joint Case Mgmt. Statement). Accordingly, Mathews, in her capacity as the

24  representative of Flenaugh's estate, has standing to pursue Flenaugh's § 1983 claims.

### 2.     Fourth Amendment

26      First, Plaintiffs allege that McNeely used excessive force in shooting Flenaugh. *See*

27  Compl. ¶ 18. This excessive force claim is properly analyzed under the Fourth Amendment. *See*

28  *Graham*, 490 U.S. at 395. Second, Plaintiffs allege that McNeely violated Flenaugh's

United States District Court
Northern District of California

1   constitutional rights by failing to timely provide or summon adequate medical care after he was

2   shot. Compl. ¶ 19. Plaintiffs allege this second claim as a violation of his rights under the Eighth

3   Amendment, while Defendants argue that it should be analyzed under the Fourteenth Amendment.

4   *See* Compl. ¶ 18; Mot. at 7. However, for reasons explained below, the Court examines these

5   allegations regarding post-arrest medical treatment using the Fourth Amendment's

6   "reasonableness" analysis.

7   **a.      Excessive force – Shooting**

8   **i.      Background law**

9       In the excessive force context, the Fourth Amendment provides an "objective

10  reasonableness" standard. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th

11  Cir. 2001). Determining whether the force used was reasonable "requires careful attention to the

12  facts and circumstances of each particular case, including the severity of the crime at issue,

13  whether the suspect poses an immediate threat to the safety of the officers or others, and whether

14  he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Of

15  these factors, the Ninth Circuit has held that the most important is "whether the suspect poses an

16  immediate threat to the safety of the officers or others." *Chew v. Gates*, 27 F.3d 1432, 1441 (9th

17  Cir. 1994).

18      The Court's inquiry is not limited to the three factors specifically enumerated in *Graham*,

19  however, because "the test of reasonableness under the Fourth Amendment is not capable of

20  precise definition or mechanical application." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir.

21  2005). "In considering an excessive force claim, [courts] balance 'the nature and quality of the

22  intrusion on the individual's Fourth Amendment interests against the countervailing governmental

23  interests at stake.'" *Graham*, 490 U.S. at 396.

24      It is well-established that in circumstances where the individual against whom the alleged

25  excessive force was used is unable to testify because he has died, "the court may not simply accept

26  what may be a self-serving account by the police officer." *Scott v. Henrich*, 39 F.3d 912, 915 (9th

27  Cir. 1994). Rather, "[i]t must also look at the circumstantial evidence that, if believed, would tend

28  to discredit the police officer's story, and consider whether this evidence could convince a rational

factfinder that the officer acted unreasonably." *Id.* Thus, "[t]he judge must carefully examine all the evidence in the record, such as medical reports, contemporaneous statements by the officer and the available physical evidence, as well as any expert testimony proffered by the plaintiff, to determine whether the officer's story is internally consistent and consistent with other known facts." *Id.*

### ii.    Discussion

**Quantum of force.** As a preliminary matter, the Court addresses the quantum of force used against Flenaugh by considering "the type and amount of force inflicted." *See Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001) (quoting *Headwaters Forest Def. v. County of Humboldt*, 240 F.3d 1185, 1198 (9th Cir. 2000), *vacated and remanded on other grounds sub nom. Cnty. of Humboldt v. Headwaters Forest Def.*, 534 U.S. 801 (2001); *Chew*, 27 F.3d at 1440). Here, McNeely fired six rounds from his gun at Flenaugh. McNeely Decl. ¶ 19. This quantum of force was indisputably deadly force. *See Hemsley v. Lunger*, C 09-6002 LHK PR, 2012 WL 216471, at *5 (N.D. Cal. Jan. 24, 2012) (citing *Blanford v. Sacramento Cnty.*, 406 F.3d 1110, 1115 n.9 (9th Cir. 2005)) (shooting nine shots at a car was "clearly" deadly force).

With regard to the use of deadly force, the Supreme Court has held that it is unreasonable under the Fourth Amendment for an officer to "seize an unarmed, nondangerous suspect by shooting him dead." *Garner*, 471 U.S. at 11. However, deadly force may be used in situations where "the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm . . . and if, where feasible, some warning has been given." *Id.* at 11–12.

**Severity of crime at issue.** The severity of the reported crime to which McNeely and other officers were responding was not insignificant. McNeely heard a radio broadcast that "several gunshots had been fired in the area of 78th Avenue and Lockwood Street." McNeely Decl. ¶ 3. Depending on the circumstances, the severity of the crime arising from the underlying shooting could vary. *See Lomeli v. Cnty. of Los Angeles*, 2:10-CV-9963-ODW CWX, 2012 WL 682879 (C.D. Cal. Mar. 1, 2012) (shooting at unoccupied cars is less severe than shooting at occupied cars); Cal. Penal Code § 245 (assault with a firearm is punishable by up to four years in prison).

1    However, neither Plaintiffs nor Defendants provide any further details about the Lockwood Street

2    shooting. From the perspective of an objectively reasonable officer, this factor weighs in favor of

3    greater force because the officer had reason to believe from the radio broadcasts that Brown and

4    Flenaugh were suspects in a serious crime. *See* McNeely Decl. ¶ 5.

5         **Resisting or evading arrest.** The critical question is what McNeely knew at the time that

6    he used force against Flenaugh. Defendants assert that Brown and Flenaugh were suspects in the

7    Lockwood Street shooting, and Defendants appear to assert that McNeely and the other officers

8    believed that Brown and Flenaugh were actively evading arrest. *See* Mot. at 5. Plaintiffs appear to

9    argue that (1) there is no forensic evidence connecting Brown and Flenaugh to the Lockwood

10   Street shooting, and (2) Brown and Flenaugh were fleeing because they thought they were being

11   shot at. *See* Brown Decl. ¶¶ 4, 5. However, there is no evidence that McNeely or the other officers

12   knew either of these alleged facts when the car chase began. The officers, without knowledge of

13   the facts alleged by Plaintiffs, pursued Brown and Flenaugh through the streets of Oakland on a

14   chase that ended when the car containing Brown and Flenaugh crashed. Throughout the chase and

15   after the crash, officers reasonably believed that Brown and Flenaugh were fleeing arrest. Thus,

16   this factor weighs in favor of greater force.

17        **Immediate threat to safety of officers.** The most important *Graham* factor is the most

18   disputed here. Defendants argue that the use of deadly force was reasonable because Flenaugh

19   "emerged from the [car] with one or more guns in hand, failed to comply with Officer McNeely's

20   verbal commands to show his hands or freeze and then pointed a gun directly at Officer

21   McNeely." *Id.* at 6 (citing McNeely Decl. ¶¶ 16–17; Ziebarth Decl. ¶ 9; Stewart Decl. ¶ 4).

22   Defendants also appear to argue that the use of deadly force was reasonable based on the facts that

23   Brown and Flenaugh left the area where shots were fired and that a car chase ensued. *See* Mot. at

24   5. To support their arguments, Defendants rely primarily on the testimony of McNeely, Ziebarth,

25   and Stewart. In opposition, Plaintiffs argue that the use of deadly force was unreasonable because

26   Flenaugh was not holding or pointing any guns, and McNeely gave no warnings before shooting.

27   Opp'n at 3–8 (citing Brown Decl. ¶ 6; Winston Decl. at 1:24–28; 2:1–6) (some citations omitted).

28   To support their arguments, Plaintiffs rely primarily on the testimony of Brown and Winston.

United States District Court
Northern District of California

17

1    The question for the Court is whether Plaintiffs have put forward sufficient admissible

2    evidence to demonstrate that there is a genuine factual dispute regarding whether Flenaugh was

3    holding or pointing any guns and whether McNeely gave any warning before shooting. The Court

4    finds that Plaintiffs have met this burden.

5    First, Brown testified that (1) he saw Flenaugh "g[e]t out of the car with his hands in a

6    normal position"; (2) he saw Flenaugh "did not have any gun in either hand"; and (3) when he

7    "watched [Flenaugh] get out, [Brown] could see his hands before he started to run, and he was not

8    holding a gun or anything." Brown Decl. ¶¶ 6–8.

9    Defendants argue that because the shooting happened as soon as Brown started to run,

10   Brown could not have been looking at Flenaugh and cannot competently testify as to whether

11   Flenaugh pointed a gun at McNeely. Reply at 5–6. They further point out that Brown's statement

12   that Flenaugh did not have guns when he exited is not equivalent to establishing that Flenaugh did

13   not have guns that he brandished after exiting the car. *Id.* at 6.

14   The Court rejects Defendants' argument. A reasonable jury could conclude from Brown's

15   testimony that Flenaugh did not have guns that he pointed at McNeely. Brown declares that

16   Flenaugh did not have a weapon before and during his exit from the car. *See* Brown Decl. ¶¶ 6, 8.

17   He also disputes Defendants' assertion that Flenaugh had his arms "crossed over his torso" and at

18   "opposite sides of his waist." *Compare id. with* McNeely Decl. ¶ 15. From this, a reasonable jury

19   could disbelieve McNeely's description of Flenaugh's hand position, indicating that Flenaugh was

20   not holding or reaching for any weapons. The jury could also conclude that, because Flenaugh did

21   not have weapons in his hands when he got out of the car, he did not have them in his hands a few

22   moments later.

23   Second, Winston testified that from his vantage point "a few feet" behind McNeely, (1) he

24   saw Flenaugh "exiting the [car's] front passenger seat, starting to run away in the opposite

25   direction" with "nothing in his hands"; and (2) he did not see "a gun in either of [Flenaugh's]

26   hands." Winston Decl. at 1:26–2:2; 2:12–13, 2:17–19. Defendants' only argument against

27   Winston's testimony is that it is inadmissible. *See* Reply at 6. As explained above, certain portions

28   of Winston's declaration are admissible. *See* Part III.B., *supra*. As with Brown's testimony, a

United States District Court
Northern District of California

18

1    reasonable jury could conclude from Winston's testimony that Flenaugh neither held nor pointed

2    any guns at McNeely.

3         Finally, as to the issue of whether McNeely gave any warning before shooting, Brown and

4    Winston both testify that they did not hear any warning. *See* Brown Decl. ¶ 3; Winston Decl. at

5    2:13. Plaintiffs also point out that Defendants present inconsistent testimony regarding what

6    McNeely yelled. *See* Opp'n at 9. *Compare* McNeely Decl. ¶ 16 ("let me see your hands, let me see

7    your hands!") *with* Stewart Decl. ¶ 4 ("Freeze! Police! Stop!").

8         After examining the evidence in the record and resolving all disputed facts in favor of

9    Plaintiffs, the Court finds that there is a genuine issue of material fact as to whether Flenaugh held

10   or pointed any guns at McNeely that would cause McNeely to fear for his life. Accordingly, the

11   question of whether McNeely's use of deadly force was excessive under the circumstances is a

12   question of fact appropriate for a jury. The Court DENIES Defendants' Motion as to the Fourth

13   Amendment claim insofar as it relies on the shooting.

### b.    Excessive force – Post-arrest medical treatment

### i.    Background law

16        Before the Supreme Court's holding in *Graham*, claims that officers failed to provide

17   medical care were analyzed under the Fourteenth Amendment. *See Ostling v. City of Bainbridge*

18   *Island*, 872 F. Supp. 2d 1117, 1129 (W.D. Wash. 2012) (citing *City of Revere v. Mass. Gen.*

19   *Hosp.*, 463 U.S. 239, 244 (1983)). After *Graham*, however, "courts now sensibly analyze both

20   claims of excessive force and failure to render post-arrest medical treatment under the same

21   reasonableness standard of the Fourth Amendment." *Ostling*, 872 F. Supp. 2d at 1129 (citing

22   *Graham*, 490 U.S. at 395; *Tatum v. City and Cnty. of San Francisco*, 441 F.3d 1090, 1099 (9th

23   Cir. 2006); *Mejia v. City of San Bernardino*, No. 11–cv–452, 2012 WL 1079341, at *5 n.12 (C.D.

24   Cal. Mar. 30, 2012) ("Ninth Circuit analyzes claims regarding deficient medical care during and

25   immediately following an arrest under the Fourth Amendment")). *See also Colson v. City of*

26   *Bakersfield*, 1:10-CV-1776 AWI JLT, 2012 WL 2872802 (E.D. Cal. July 11, 2012) ("Ninth

27   Circuit has indicated that the Fourth Amendment's objective reasonableness standard applies to

28   claims of deficient medical care for those who were injured while being apprehended"). In *Tatum*,

United States District Court
Northern District of California

1    the Ninth Circuit held that "a police officer who promptly summons the necessary medical

2    assistance has acted reasonably for purposes of the Fourth Amendment, even if the officer did not

3    administer CPR." *Tatum*, 441 F.3d at 1099 (citing *Maddox v. City of Los Angeles*, 792 F.2d 1408,

4    1415 (9th Cir. 1986)).

**ii.     Discussion**

6           Defendants argue that because officers at the scene of the shooting promptly summoned

7    medical care, Plaintiffs' claims regarding post-arrest medical treatment must fail. Specifically,

8    Defendants assert that the events leading up to the shooting—namely, the car chase and

9    collision—began shortly after 4:00 p.m. and that an eyewitness states that he first noticed the car

10   containing Flenaugh at 4:09 p.m., right before it crashed. *See* Mot. at 9 (citing Stewart Decl. ¶ 3).

11   Defendants assert that medical assistance was summoned twice, approximately ten minutes later at

12   4:19 p.m. and 4:22 p.m. Mot. at 9 (citing Harris-Gilyard Decl. ¶¶ 8–9, Ex. A). This fact is

13   corroborated by evidence showing that AMR received a call for medical assistance at

14   approximately 4:20 p.m. and arrived on the scene approximately six minutes later at 4:26 p.m.

15   Mot. at 9 (citing Murphy Decl. at ¶¶ 4–6).

16          Plaintiffs assert that officers "failed to render needed medical treatment or seek timely

17   emergency care" and that "[i]f CPR were administered . . . it harmed [Flenaugh] rather than helped

18   him, given the gunshot wounds he sustained." Compl. ¶ 19. Plaintiffs further assert that officers

19   "were deliberately indifferent to [Flenaugh's] injuries, his pain and suffering and his very life

20   itself." *Id.* According to Plaintiffs, Flenaugh was dragged along the ground several times before

21   any CPR was performed. *See* Opp'n at 2. *See also* Reyno Dep. at 74:7–10, 21, 76:11–15, 78:24–

22   25, 79:1–5. Plaintiffs assert that "[a]fter a chest gunshot wound, minutes are precious and even

23   seconds count," and that the "timing and initiation and whether [CPR] was delayed unnecessarily

24   is in dispute." Opp'n at 2. In support of their assertions, they point to the absence of any testimony

25   that CPR was initiated timely, as well as the absence of the paramedic's testimony on various

26   issues, including: when he was able to begin providing medical attention to Flenaugh, whether

27   "prior actions were applied, complete, optimal or even effective," "how long Flenaugh had

28   survived," or "whether he could have been saved by earlier medical intervention." *Id.* (citing

United States District Court
Northern District of California

20

1   Murphy Decl.).

2       The question for the Court is whether Plaintiffs have put forward sufficient admissible

3   evidence to demonstrate that there is a genuine factual dispute regarding whether McNeely and

4   other officers acted "reasonably for purposes of the Fourth Amendment." *See Tatum*, 441 F.3d at

5   1099. Here, the evidence indicates that shortly after Flenaugh fell, officers promptly called for

6   medical assistance, thus meeting the standard articulated by the Ninth Circuit. *See id.* The burden

7   then shifts to the Plaintiffs to demonstrate "specific facts showing that there is a genuine issue for

8   trial." *See Celotex*, 477 U.S. at 324. Plaintiffs do not meet this burden.

9       Plaintiffs point only to the *absence* of testimony that addresses their assertions, but such

10  absence is not equivalent to "specific facts." *See Arpin*, 261 F.3d at 922 (plaintiff failed to meet

11  burden to show injury from alleged excessive force where she submitted no medical records or

12  any other forms of evidence). Plaintiffs provide no specific facts to support their allegations that

13  McNeely and the officers did not promptly summon medical aid, that the paramedics were

14  prevented from timely accessing Flenaugh to give him medical treatment, that Flenaugh would

15  have survived had medical treatment been more timely or effective, or that any CPR that was

16  performed harmed Flenaugh. *See Opp'n at 2.* In fact, the evidence in the record shows that

17  medical help was timely. The paramedics arrived approximately six minutes after the shooting.

18  *See Mot.* at 9 (citing Murphy Decl. at ¶¶ 4–6). Plaintiffs' witness Reyno estimated that medical

19  assistance arrived within five minutes of the shooting. *See Reyno Dep.* at 77:1–11.

20      Furthermore, Plaintiffs have not presented any evidence to demonstrate that the act of

21  moving or dragging Flenaugh along the ground harmed Flenaugh. In fact, they concede that "there

22  is no evidence Flenaugh's condition worsened for being moved." *See Opp'n* at 19. In an attempt to

23  justify this deficiency, they assert that "there is no credible medical assessment as a guideline to

24  make that determination due to defendant's poor reporting and record keeping along side it [sic]

25  deficient communications system." *Id.* Even if the Court accepts Plaintiffs' assertions as true, it

26  still cannot find that a complete lack of evidence regarding injury is sufficient to create a triable

27  issue of fact. *See Arpin*, 261 F.3d at 922 (affirming summary judgment for municipal agency

28  where plaintiff failed to provide "specific facts to show that . . . she sustained actual injuries").

United States District Court
Northern District of California

21

1    Additionally, the officers' stated justification for moving Flenaugh—the engine fire—is

2    not patently unreasonable, despite Plaintiffs' evidence that the fire was not terribly large. *See*

3    *Mejia v. City of San Bernardino*, EDCV 11-00452 VAP, 2012 WL 1079341 (C.D. Cal. Mar. 30,

4    2012) (granting summary judgment for city on Fourth Amendment claim of inadequate post-arrest

5    medical care where officers moved man who had been shot by officer to a different room "to

6    allow more space for paramedics to render medical aid"). *See also* Reyno Dep. at 20:7–11 ("I

7    didn't like the fact that [Flenaugh] was dragged . . . because when I saw . . . the body—it was

8    lifeless . . . then I thought for a second maybe they just pulled him out of the burning car and just

9    pulling [sic] him away for safety.") (emphasis added).

10    Because of the lack of evidence to contradict facts in the record and, in light of the

11    principle that courts should give "deference to the judgment of reasonable officers on the scene" in

12    the evaluation of reasonableness under the Fourth Amendment, the Court finds that there is no

13    genuine factual dispute as to whether McNeely and other officers acted reasonably in their

14    provision of post-arrest medical treatment. *See Saucier v. Katz*, 533 U.S. 194, 205 (2001).

15    Accordingly, the Court GRANTS Defendants' Motion as to the Fourth Amendment claim insofar

16    as it relies on post-arrest medical treatment.

### 3.    Fifth Amendment

18    Plaintiffs argue that McNeely violated Flenaugh's Fifth Amendment due process rights "to

19    surrender peaceably if he were suspected of a crime" or "to be afforded an opportunity to conform

20    to a proper demand before resort to fatal force." Compl. ¶18; Opp'n at 15. Plaintiffs are correct

21    that officers have a constitutional duty to warn before the use of deadly force "where feasible," *see*

22    *Garner*, 471 U.S. at 11–12, but this does not equate to an absolute duty under all circumstances.[3]

23    Moreover, the Fifth Amendment is not the source of these rights. Plaintiffs' argument

24    appears to be an extension of an excessive force claim, which the Supreme Court has held must be

25    analyzed under the Fourth Amendment. *Graham*, 490 U.S. at 395. In *Graham*, the Supreme Court

26    _____

27    [3] Additionally, Plaintiffs appear to argue that the alleged failure to warn also violated Flenaugh's rights under the
California Constitution. *See* Opp'n at 18. However, this argument is raised for the first time in the Opposition and it is
not accompanied by any explanation or citations to specific constitutional provisions. Accordingly, the Court does not
28    address this claim.

United States District Court
Northern District of California

held that "[a]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* The Supreme Court relied on its decision in *Garner*, wherein the complaint had alleged multiple constitutional violations, including those of the Fifth and the Fourteenth Amendments, but the Court analyzed the excessive force claim only under only the Fourth Amendment. *See id.* at 395; *Garner*, 471 U.S. at 5. "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham*, 490 U.S. at 395.

Plaintiffs' Fifth Amendment claim fails for the additional reason that McNeely is a local law enforcement official, and the Fifth Amendment's due process clause only applies to the federal government. *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (2008) (citing *Betts v. Brady*, 316 U.S. 455, 462 (1942) ("Due process of law is secured against invasion by the federal Government by the Fifth Amendment and is safe-guarded against state action in identical words by the Fourteenth."), *overruled on other grounds by Gideon v. Wainwright*, 372 U.S. 335 (1963)) (citations omitted). Plaintiffs cite no authority to controvert these established holdings. Accordingly, the Court GRANTS Defendants' Motion as to the Fifth Amendment claim.

### 4. Eighth Amendment

Plaintiffs allege that Flenaugh's Eighth Amendment rights were violated because he was "deprived of the life saving emergency treatment that would have enhanced his opportunity to survive defendant's wanton or negligent use of force." Comp. ¶ 19. However, Plaintiffs claim fails because the Eighth Amendment "deliberate indifference" standard—which is harder for Plaintiffs to demonstrate than the Fourth Amendment's "reasonableness" standard—applies "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Graham*, 490 U.S. at 398–99 (quoting *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977)). Because there had been no formal adjudication of guilt against Flenaugh at the time he required medical care, the Eighth Amendment does not apply here.

1    Additionally, to the extent that Plaintiffs' Eighth Amendment claim is based on the

2    shooting itself, this also fails because, as discussed above, excessive force claims arising from a

3    seizure are properly analyzed under the Fourth Amendment's reasonableness standard. *See*

4    *Graham*, 490 U.S. at 395. The Supreme Court in *Graham* expressly rejected an Eighth

5    Amendment analysis in this context. *See id.* at 397–99. Accordingly, the Court GRANTS

6    Defendants' Motion as to the Eighth Amendment claim.

7                        **5.       Fourteenth Amendment**

8                        **a.       Discrimination based on race**

9    Plaintiffs allege that McNeely "treated [Flenaugh] in a discriminatory manner, shooting to

10   kill, when lesser or no force would have been appropriate," thereby violating Flenaugh's

11   Fourteenth Amendment rights. Compl. ¶ 20. Plaintiffs also note that Flenaugh "was an African

12   American male, a common racial characteristic of police shooting victims in Oakland." *Id.*

13   To make a successful § 1983 equal protection claim, plaintiffs generally must prove that

14   defendants acted in a discriminatory manner and that the discrimination was intentional. *See Reese*

15   *v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000) (citing *Federal Deposit Ins.*

16   *Corp. v. Henderson*, 940 F.2d 465, 471 (9th Cir.1991)). Here, Plaintiffs have failed to put forth

17   sufficient evidence of racial animus or motivation. They have asserted only that Flenaugh was an

18   African-American male and that "African-American males are a common racial characteristic of

19   police shooting victims in Oakland." *See* Compl. ¶ 20. In their Opposition, they further assert that

20   "they can prove the Caucasian police officers in the City of Oakland shoot persons of color more

21   than they shoot non minority individuals, and the statistics show in most officer involved

22   shootings where there is a fatality, the decedent is an African American." Opp'n at 17. Plaintiffs

23   also allude to two police shootings by City officers that occurred near the date of Flenaugh's

24   shooting. *See id.*; Compl. ¶ 23. However, none of these facts are sufficient to show that McNeely

25   intentionally discriminated against Flenaugh.

26   Plaintiffs make one oblique reference to the record by asserting that "[t]hese [above] facts

27   are brought forth in minor part in the deposition responses of McNeely in pages 22, et seq." *See id.*

28   However, page 22 and the immediately subsequent pages of McNeely's deposition allude only to

*United States District Court*
*Northern District of California*

24

the general racial characteristics of the neighborhood. *See* McNeely Dep. at 22. Thus, Plaintiffs have failed to support their assertions with citations "to particular parts of materials in the record." *See* Fed. R. Civ. P. 56(c)(1)(A). Additionally, Defendants argue that no intentional discrimination could have occurred because McNeely did not know Flenaugh's race at the time of the shooting. *See* Reply at 9 (citing Decl. of Carolyn Tsai in Supp. of Defs.' Reply Ex. A (Excerpts of McNeely Dep.)).

Accordingly, the Court GRANTS Defendants' Motion as to the Fourteenth Amendment claim insofar as it relies on the alleged racial discrimination of McNeely against Flenaugh.

### b.      Excessive force

As explained above, the Supreme Court has held that the proper analysis for an excessive force claim lies in the Fourth Amendment. *See* Part IV.A.2., *supra*. This applies both to Plaintiffs' Fourteenth Amendment theories arising from the shooting and post-arrest medical care. *See Ostling*, 872 F. Supp. 2d at1129 (citing *Graham*, 490 U.S. at 395; *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)) (after *Graham*, "courts now sensibly analyze both claims of excessive force and failure to render post-arrest medical aid under the same reasonableness standard of the Fourth Amendment"). Plaintiffs provide no authority or substantive argument to contradict the Supreme Court's holding in *Graham*. *See* Opp'n at 18. Accordingly, the Court GRANTS Defendants' Motion as to the Fourteenth Amendment claim insofar as it relies on the alleged use of excessive force (shooting and post-arrest medical treatment).

### 6.      New claim of unconstitutional policy

For the first time in their Opposition, Plaintiffs assert that the City has an unconstitutional policy "designed to insulate and protect their officers who are involved in shootings and promulgate a false rendition of events and inhibit free speech and inquiry," and that and that "[t]his policy is not designed to protect the public or even to preserve evidence for prosecution. It has a primary and maybe sole purpose of protecting the officer who shoots and especially the officer who kills a civilian or suspect." Opp'n at 13–14. Plaintiffs do not specify the provisions of the U.S. or California Constitutions under which these claims arise. The Court construes this as an attempted amendment to the Complaint and exercises its discretion to disallow the amendment.

United States District Court
Northern District of California

#### a.    Standard for amending pleadings

A party may amend a pleading once as a matter of course at any time before a responsive pleading is served. *See* Fed. R. Civ. P. 15(a). Otherwise, a party may amend a pleading only by leave of court or by the written consent of the adverse party. *See id.* Generally, Rule 15 advises that "leave [to amend] shall be freely given when justice so requires." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (*per curiam*). *See also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (*en banc*). In assessing whether to grant leave, the court considers whether the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; (4) is futile; or (5) if the plaintiff has previously amended his or her complaint. *See AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006); *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004); *Johnson v. Buckley,* 356 F.3d 1067, 1077 (9th Cir. 2004).

The first factor is the most important. "Prejudice [to the opposing party] is the touchstone of the inquiry under rule 15(a)." *Eminence Capital*, 316 F.3d at 1052 (internal citations omitted). Prejudice may exist where a motion to amend is brought late in the litigation. *Knight v. Nimrod*, C 00-0290 SBA, 2007 WL 2669832, at *2 (N.D. Cal. Sept. 7, 2007) (citing *Solomon v. North Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999)). "A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin*, 194 F.3d at 986.

#### b.    Discussion

Plaintiffs allege that the City has an unconstitutional policy that protects officers who have been involved in shootings. Opp'n at 13. Specifically, they point to the following alleged facts: (1) immediately after the shooting, an officer took charge and assigned another officer as McNeely's "caretaker"; (2) Ziebarth, the second officer to arrive on the scene, was insulated by writing no crime report and not contributing to the crime reports revealed in discovery, and he did not provide any testimony other than a limited declaration despite his role in handcuffing plaintiff and "taking initial control of the weapons claimed to have been attributed to Flenaugh"; (3) "Mathews

26

1     was denied access to unedited information regarding the circumstances of the death of her son to

2     prevent her knowing the wrongful nature of the officer's actions and to inhibit her receiving

3     appropriate redress for the plaintiffs' losses." *Id.* at 13–14 (citing McNeely Dep. at 29:4–6;

4     Mathews Decl. ¶¶ 5, 7, 9).

5          This evidence is insufficient to show any unconstitutional policy that resulted in the injury

6     that is asserted here, *i.e.*, the death of Flenaugh. In any event, this "theory" is completely new.

7     Assertion now—during summary judgment proceedings, after discovery is closed and two months

8     before trial—would cause a delay in the litigation and prejudice the opposing party. Further, the

9     claim appears to be a fact-intensive issue that would require the reopening of discovery. *See*

10    *Lockheed Martin*, 194 F.3d at 986 (need to reopen discovery supports refusal to allow

11    amendment). Furthermore, Plaintiffs have previously amended their Complaint and no hint of this

12    claim is stated. Accordingly, the Court declines to allow Plaintiffs to amend its Complaint to add

13    this claim of an unconstitutional policy against the City.

14                    7.    **Qualified immunity**[4]

15         Qualified immunity protects government officials performing discretionary functions

16    "from liability for civil damages insofar as their conduct does not violate clearly established

17    statutory or constitutional rights of which a reasonable person would have known." *Harlow v.*

18    *Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the

19    need to hold public officials accountable when they exercise power irresponsibly and the need to

20    shield officials from harassment, distraction, and liability when they perform their duties

21    reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The Supreme Court has explained

22    that the "driving force behind the creation of the qualified immunity doctrine was a desire to

23    ensure that insubstantial claims against government officials will be resolved prior to discovery."

24    *Id.* (internal citations omitted). Thus, courts should resolve questions of qualified immunity "at the

25    earliest possible stage in litigation." *Id.* at 231–32 (citing *Hunter v. Bryant*, 502 U.S. 224, 227

26    (1991)).

27

28    ───────────────
      [4] In their Motion, Defendants did not raise the issue of qualified immunity; they raised only the issue of immunity
      under state law. *See* Mot. at 11. However, Plaintiffs address it briefly in their Opposition. *See* Opp'n at 18–19.

United States District Court
Northern District of California

1    There are two questions in the qualified immunity analysis: (1) whether there was a

2  deprivation of a constitutional or statutory right, and (2) whether that constitutional or statutory

3  right was "clearly established" at the time of the incident. *See Saucier*, 533 U.S. at 207; *Pearson*,

4  555 U.S. at 232. As to whether a constitutional right is "clearly established," the central inquiry is

5  whether the right is "particularized." *See Saucier*, 533 U.S. at 201. It is not enough that the general

6  rule is established. *Id.* Rather, "[t]he contours of the right must be sufficiently clear that a

7  reasonable official would understand that what he is doing violates that right." *Id.* at 202 (quoting

8  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Supreme Court has cautioned that courts

9  should afford "deference to the judgment of reasonable officers on the scene" and should not use

10  "20/20 hindsight vision." *Saucier*, 533 U.S. at 205.

11    Here, the Court has found that there is a question of fact as to whether McNeely violated

12  Flenaugh's Fourth Amendment right to be free from excessive force. *See* Part IV.A.2.a., *supra*.

13  Therefore, McNeely is entitled to qualified immunity at this stage of the case only if the Court

14  finds that even assuming McNeely used excessive force, he did so based on a reasonable, though

15  mistaken, belief that under established case law, his conduct was reasonable. *See, e.g.*, *Russell v.*

16  *City & Cnty. of San Francisco*, C-12-00929-JCS, 2013 WL 2447865, at *12 (N.D. Cal. June 5,

17  2013) (applying same approach).

18    Drawing all reasonable inferences in Plaintiffs' favor, the jury could find that Flenaugh

19  was not holding any guns and McNeely had no reason to fear for his life. Under that version of

20  events, a reasonable officer would have known that deadly force was unreasonable based on the

21  Supreme Court's holding that it is unreasonable to "seize an unarmed, nondangerous suspect by

22  shooting him dead." *See Garner*, 471 U.S. at 11. Accordingly, McNeely is not entitled to qualified

23  immunity as to the shooting.

24    However, the Court has found that McNeely and other officers acted reasonably when they

25  promptly summoned medical care for Flenaugh, which met the standard under established case

26  law. *See* Part IV.A.2.b., *supra*; *Tatum*, 441 F.3d at 1099. Accordingly, McNeely is entitled to

27  qualified immunity as to his involvement in the post-arrest medical treatment.

28  ///

**B.     State Claims**

**1.      Wrongful death**

To succeed on a claim for wrongful death under California law, a plaintiff must establish three elements: "(1) a 'wrongful act or neglect' on the part of one or more persons that (2) 'cause[s]' (3) the 'death of [another] person.'" *Machado v. California Dep't of Corr. & Rehabilition*, 12-CV-6501 JSC, 2013 WL 5800380, at *6 (N.D. Cal. Oct. 28, 2013) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 390 (1999); Cal. Civ. Proc. Code § 377.60)).

**a.      Shooting**

As explained above, there is a genuine issue of material fact as to whether Flenaugh held or pointed any guns that would render McNeely's use of deadly force reasonable. *See* Part IV.A.2.a., *supra*. Accordingly, the Court DENIES Defendants' Motion as to the wrongful death claim insofar as it is based on the shooting.

**b.      Post-arrest medical treatment**

As explained above, there is not a genuine issue of material fact as to whether McNeely or other officers acted reasonably in providing or summoning medical care after the shooting. *See* Part IV.A.2.b., *supra*. Accordingly, the Court GRANTS Defendants' Motion as to the wrongful death claim insofar as it is based on the post-arrest medical treatment.

**2.      Negligence**

To succeed on a claim for negligence under California law, a plaintiff must establish four elements: (1) duty; (2) breach; (3) causation; and (4) damages. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003) (citing *Martinez v. Pacific Bell*, 225 Cal. App. 3d 1557 (1990); 6 Witkin, Summary of Cal. Law, Torts § 732 at 60–61 (9th ed. 1988)).

**a.      Shooting**

The California Supreme Court has "long recognized that peace officers have a duty to act reasonably when using deadly force." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013) (citing *Munoz v. Olin*, 24 Cal. 3d 629, 634 (1979); *Grudt v. City of Los Angeles*, 2 Cal. 3d 575, 587 (1970)). As explained above, there is a genuine issue of material fact as to whether Flenaugh held any or pointed any guns that would render McNeely's use of deadly force reasonable. *See*

1    Part IV.A.2.a., *supra*. Accordingly, the Court DENIES Defendants' Motion as to the negligence

2    claim insofar as it is based on the shooting.

3                              **b.      Post-arrest medical treatment**

4            Officers have a constitutional duty under the Fourth Amendment to promptly summon

5    medical care for a post-arrest detainee who is injured. *See Tatum*, 441 F.3d at 1099. This is similar

6    to a common law duty in the torts context. As explained above, there is not a genuine issue of

7    material fact as to whether McNeely or other officers acted reasonably under the Fourth

8    Amendment standard in summoning medical care after the shooting. *See* Part IV.A.2.b., *supra*.

9    Similarly, there is not a genuine issue of material fact as to whether McNeely or other officers

10   breached their duties to Flenaugh under the law of negligence. Accordingly, the Court GRANTS

11   Defendants' Motion as to the negligence claim insofar as it is based on the post-arrest medical

12   treatment.

13                      **3.      IIED**

14                              **a.      Background law**

15           To succeed on a claim for IIED under California law, a plaintiff must establish four

16   elements: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or

17   reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering

18   severe or extreme emotional distress; and (3) actual and proximate causation of the emotional

19   distress by defendant's outrageous conduct." *Sabow v. United States*, 93 F.3d 1445, 1454–55 (9th

20   Cir. 1996) (quoting *Christensen v. Superior Court*, 54 Cal. 3d 868, 905 (1991)). The conduct must

21   not only be intentional and outrageous, but must also be "directed at plaintiff, or occur in the

22   presence of a plaintiff of whom defendant is aware." *Id.* at 1454–55 (quoting *Christensen*, 54 Cal.

23   3d at 903) (alterations and quotations omitted). Additionally, "media or other secondhand reports

24   about psychologically devastating events are not a sufficient basis for imposition of liability for

25   emotional distress suffered by persons who are upset thereby." *Christensen*, 54 Cal. 3d at 901.

26                              **b.      Discussion**

27           "Individual Plaintiffs" bring the IIED claim. Although this term is not defined, the Court

28   infers from the allegations in the Complaint and the Opposition that it is intended to refer to

United States District Court
Northern District of California

1    Mathews, Flenaugh Sr., and Kamarty. *See* Compl. ¶ 26. Their claims fail because they do not

2    allege that McNeely or any other officers were "intentionally trying to cause mental distress" to

3    them. *See Zachary v. Cnty. of Sacramento*, 2:06-CV-01652-MCEEFB, 2010 WL 1328892, at *7

4    (E.D. Cal. Apr. 5, 2010). In fact, there is no allegation that McNeely or other officers even knew

5    of their identities at the time of the shooting. *See* Mot. at 13.

6         To the extent that Individual Plaintiffs' claims rely on theory of recklessness, this is

7    precluded by the fact that none of them are alleged to have been physically present at the scene of

8    the shooting or its aftermath. *See Christensen*, 54 Cal. 3d at 905; Compl. ¶ 26; Mathews Decl.

9    ¶¶ 2–3 (stating that she watched television broadcasts of the incident); Hill Decl. ¶¶ 4–5 (same);

10   Decl. of Carolyn Tsai in Supp. of Mot. Ex. A at 16:21–17:2, 17:22–25 (Excerpts of Mathews

11   Dep.) (stating she was not present but that she watched television broadcasts), Ex. B at 14:19–

12   15:5; 63:7–20 (Excerpts of Flenaugh Sr. Dep.) (same). Their viewing of the media coverage of the

13   distressing events is not sufficient to state a claim for IIED. *See Christensen*, 54 Cal. 3d at 901.

14   There is no allegation that Kamarty was present at the scene of the shooting.

15        Even where a family member is physically present during the allegedly distressing

16   incident, a claim cannot survive summary judgment without evidence that defendants' conduct

17   was intentional. For example, where a daughter watched and listened to officers beat her father

18   who later died of his injuries, a federal district court granted summary judgment for the county on

19   the daughter's IIED claim because she could not show that the officers "were aware of [her]

20   presence at the time of her father's arrest and that they were intentionally trying to cause mental

21   distress." *Zachary*, 22010 WL 1328892, at *7. Here, Plaintiffs were not present, and they do not

22   present specific facts to support their claims that McNeely or other officers intentionally or

23   recklessly directed their conduct toward Plaintiffs. Accordingly, the Court GRANTS Defendants'

24   Motion as to the IIED claim.

25                        **4.    Bane Act**

26                             **a.    Background law**

27        Section 52.1 of the California Civil Code gives rise to a claim where "a person or persons,

28   whether or not acting under color of law, interferes by threats, intimidation, or coercion, or

1    attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any

2    individual or individuals of rights secured by the Constitution or laws of the United States, or of

3    the rights secured by the Constitution or laws of this state." To prevail on a Bane Act claim, a

4    plaintiff must demonstrate: (1) an act of interference with a legal right by (2) intimidation, threats

5    or coercion. *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998).

**b.    Discussion**

7        Plaintiffs allege that Defendants violated the Bane Act on the grounds of (1) inadequate

8    post-arrest medical care and (2) intimidation of witnesses and tampering with evidence during the

9    investigation. *See* Compl. ¶ 28; Opp'n at 20–22. Defendants seek summary judgment on the

10   grounds that McNeely and other officers' provision of post-arrest care was reasonable and, even if

11   not, the Estate cannot demonstrate that this alleged violation of Flenaugh's constitutional rights

12   was accompanied by independent "threats, intimidation, or coercion." *See* Mot. 15–16. Defendants

13   also argue that to the extent the Bane Act claim relies on the shooting, the claim fails because

14   there were no independent "threats, intimidation, or coercion." Mot. at 16. Finally, Defendants

15   argue that the Estate's claim regarding intimidation of witnesses fails because it is illogical that

16   any intimidation that occurred after Flenaugh's death could be said to have violated his

17   constitutional rights. Reply at 15.

**i.    Intimidation of witnesses**

19       Plaintiffs allege that the Bane Act is applicable because the Estate has been "deprived of its

20   right to redress and the right to have the truth made public because of witness intimidation or

21   evidence tampering. This right survives even if the individual no longer lives." Opp'n at 20.

22   Plaintiffs concede that this is a matter of first impression. *Id.* Defendants argue that such a claim

23   cannot survive Flenaugh's death. Reply at 15.

24       The Bane Act allows a plaintiff to bring a claim that he was deprived of his constitutional

25   rights by the intimidation or coercion of third-parties, such as witnesses summoned to testify

26   against the plaintiff. *See Walker v. Cnty. of Santa Clara*, C 04-02211 RMW, 2005 WL 2437037

27   (N.D. Cal. Sept. 30, 2005) (rejecting argument that "defendants are liable under section 52.1 when

28   they attempt to interfere with a plaintiff's constitutional or statutory rights by making direct threats

32

United States District Court
Northern District of California

1    against the plaintiff, but when defendants attempt to interfere with a plaintiff's constitutional or

2    statutory rights by making threats against third parties, section 52 .1 liability is unavailable");

3    *Fenters v. Yosemite Chevron*, 761 F. Supp. 2d 957, 998 (E.D. Cal. 2010) (refusing to grant

4    summary judgment for defendant on Bane Act claim based on alleged inappropriate influence of

5    prosecutor on witness adverse to plaintiff).

6           Courts have held that Bane Act claims can survive the death of the plaintiff and can be

7    brought by the plaintiff's estate. *See, e.g.*, *Estate of Hernandez-Rojas v. United States*, 11-CV-

8    0522-L DHB, 2013 WL 5353822 (S.D. Cal. Sept. 24, 2013) (finding that estate could bring Bane

9    Act claim on behalf of decedent).

10          Here, Plaintiffs have submitted some evidence that intimidation, threats, or coercion

11   occurred. *See, e.g.*, Opp'n at 20–21 (alleging that officers intimidated eyewitness Winston and

12   encouraged him not to testify). However, the Court need not weigh the sufficiency of Plaintiffs'

13   evidence because the Court resolves this claim as a matter of law. The pertinent question is

14   whether the Estate has constitutional rights that can be vindicated by the Bane Act despite the fact

15   that the alleged acts of witness intimidation occurred after Flenaugh's death. The parties provide

16   the Court no guidance on this issue.

17          Based on its own research, the Court holds that an "estate" is not an "individual" under the

18   definition of the Bane Act. *See* Cal. Civ. Code 52.1 (located in "Division 1 – Persons, Part 2 –

19   Personal Rights"); Black's Law Dictionary (9th ed. 2009) ("estate" is defined as "[t]he property

20   that one leaves after death; the collective assets and liabilities of a dead person."). That is, an

21   estate does not have any claim to a right to be free of the "threats, intimidation or coercion,"

22   independent from that which accrued to the decedent before his death.

23          Accordingly, the Court holds that, at least in the Bane Act context, an estate only has the

24   capacity to bring the claims that survived the plaintiff. If decedent did not acquire the right to

25   pursue a legal claim before his death, then it cannot be transferred to his estate. *Accord*, Cal. Civ.

26   Proc. Code § 377.30 ("A cause of action that survives the death of the person entitled to

27   commence an action or proceeding passes to the decedent's successor in interest . . . and an action

28   may be commenced by the decedent's personal representative or, if none, by the decedent's

*United States District Court*
*Northern District of California*

1  successor in interest."). Plaintiffs point to no authority to support the proposition that an estate has

2  its own rights independent from the decedent's in the Bane Act context. The Court GRANTS

3  Defendants' Motion as to the Bane Act claim insofar it relies on intimidation or coercion of

4  witnesses and evidence tampering.

5  ii.   **Shooting**

6  As discussed above, the Court finds that there are fact questions that cannot be resolved on

7  summary judgment as to whether McNeely's use of deadly force in shooting Flenaugh was

8  reasonable. *See* Part IV.A.2.a., *supra*. Accordingly, summary judgment on the Bane Act claim

9  based on the alleged excessive force of the shooting cannot be granted on this ground.

10  As to Defendants' argument that a Bane Act claim requires "threats, intimidation or

11  coercion" *independent* of the alleged violation of Flenaugh's constitutional right to be free of

12  excessive force, the Court has previously addressed and rejected such an argument. *See Russell*,

13  2013 WL 2447865, at *15. This Court has previously explained that there is a split in authority on

14  the issue of whether a successful Bane Act claim requires threats, intimidation or coercion

15  independent of the constitutional violation. *See id.* (citing *Haynes v. City and Cnty. of San*

16  *Francisco*, No. C 09–0174 PJH, 2010 WL 2991732, at *6 (N.D. Cal. July 28, 2010) (independent

17  showing not required); *Justin v. City and Cnty. of San Francisco*, No. C05-4812 MEJ, 2008 WL

18  1990819, at *9 (N.D. Cal. May 5, 2008) (independent showing required); *Cole v. Doe 1 thru 2*

19  *Officers of City of Emeryville Police Dep't*, 387 F. Supp. 2d 1084, 1102 (N.D. Cal. 2005) ("[u]se

20  of law enforcement authority to effectuate a . . . detention . . . can constitute threats, intimidation,

21  or coercion under the Bane Act") (relying on California cases)). *See also Dorger v. City of Napa*,

22  12-CV-00440-WHO, 2013 WL 5804544 (N.D. Cal. Oct. 24, 2013) (granting summary judgment

23  for city where no independent intimidation, threats, or coercion were found). However, the Court

24  has concluded that the better view is that an independent showing of "threats, intimidation or

25  coercion" is not required. *Russell*, 2013 WL 2447865, at *15.

26  Because the Court finds that the Estate is not required to establish "threats, intimidation or

27  coercion" independent from a constitutional violation, and because there is a fact question as to

28  whether the force used against Flenaugh was reasonable, the Court DENIES Defendants' Motion

United States District Court
Northern District of California

34

as to the Bane Act claim insofar as it relies on the shooting.

### iii.    Post-arrest medical treatment

Because the Court finds that there is no genuine issue of material fact as to whether McNeely and other officers' provision of post-arrest medical care to Flenaugh was reasonable under the circumstances, the Court GRANTS Defendants' Motion as to the Bane Act claim insofar is it relies on post-arrest medical care.

### 5.    Battery

#### a.    Background law

California statute defines battery as "any willful and unlawful use of force or violence upon the person of another." Cal. Penal Code § 242. To succeed on a claim for battery under California law, a plaintiff must establish three elements: "(1) defendant intentionally did an act which resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss, or harm to plaintiff." *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1166 (N.D. Cal. 2009) (citing *Piedra v. Dugan*, 123 Cal. App. 4th 1483, 1495 (2004)).

"[T]o prevail on a claim of battery against a police officer, the plaintiff bears the burden of proving the officer used unreasonable force." *Hernandez v. Cnty. of Marin*, 11-CV-03085-JST, 2013 WL 4525640, at *8 (N.D. Cal. Aug. 19, 2013) (quoting *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102 (2004)). "Police officers acting in their official capacities may thus 'use reasonable force to make an arrest, prevent escape or overcome resistance, and need not desist in the face of resistance.'" *P.A. v. United States*, C 10-2811 PSG, 2013 WL 3864452, at *7 (N.D. Cal. July 24, 2013) (quoting *Munoz*, 120 Cal. App. 4th at 1102). The determination of whether an officer breached such duty is "analyzed under the reasonableness standard of the Fourth Amendment." *Hernandez*, 2013 WL 4525640, at *8 (quoting *Munoz*, 120 Cal. App. 4th at 1102).

#### b.    Discussion

Plaintiffs allege that McNeely committed battery when he shot Flenaugh, and that McNeely and other officers committed battery when they moved Flenaugh after he was shot. Compl. ¶ 30.

1    As explained above, there is a genuine issue of material fact as to whether Flenaugh held

2    any or pointed any guns that would render McNeely's use of deadly force reasonable. *See* Part

3    IV.A.2.a., *supra*. Accordingly, the Court DENIES Defendants' Motion as to the battery claim

4    insofar as it relies on the shooting. However, because the Court finds that McNeely and other

5    officers acted reasonably in moving Flenaugh away from the car after he was shot, *see* Part

6    IV.A.2.b., *supra*, the Court GRANTS Defendants' Motion as to the battery claim insofar as it

7    relies on any physical contact after the shooting.

### 6.    New claim of police cover-up

8

9    For the first time in their Opposition, Plaintiffs allege that the City caused a cover-up of the

10   incident. *See* Opp'n at 23–24. Plaintiffs do not specify the common law or statutory basis for their

11   claim of a cover-up. As with the unconstitutional policy claim discussed above, the Court

12   construes this as an attempted amendment to the Complaint and exercises its discretion to disallow

13   the amendment for many of the reasons stated above. *See* Part IV.A.6, *supra*.

### 7.    Vicarious liability and immunity

14

### a.    Background law

15

16   California holds public entities responsible for the tortious acts of its employees under the

17   doctrine of vicarious liability, and it grants immunity to public entities only where the public

18   employee would also be immune. *See Tien Van Nguyen v. City of Union City*, C-13-01753-DMR,

19   2013 WL 3014136 (N.D. Cal. June 17, 2013) (citing Cal. Gov. Code § 815.2; *Robinson v. Solano*

20   *Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002)). However, public entities cannot be held *directly*

21   liable unless a specific statutory basis exists. *See Herrera v. City of Sacramento*, 2:13-CV-00456

22   JAM-AC, 2013 WL 3992497, at *7 (E.D. Cal. Aug. 2, 2013) (citing *Zelig v. County of Los*

23   *Angeles*, 27 Cal.4th 1112, 1127 (2002)) ("there is a 'clear distinction' between holding a public

24   entity vicariously liable for the acts of their employees and holding it directly liable"). "[D]irect

25   tort liability of public entities must be based on a specific statute declaring them to be liable, or at

26   least creating some specific duty of care . . . ." *Herrera*, 2013 WL 3992497, at *7 (quoting

27   *Eastburn v. Regional Fire Prot. Auth.*, 31 Cal. 4th 1175, 1183 (2003)).

28   Where a public employee causes the death of another person, the employee—and thus the

United States District Court
Northern District of California

public entity employer—is immune if the death was a "justifiable homicide." *See Martinez v. Cnty. of Los Angeles*, 47 Cal. App. 4th 334, 349 (1996) (citing *Reynolds v. Cnty. of San Diego*, 858 F. Supp. 1064, 1075 (S.D. Cal. 1994); *Gilmore v. Superior Court*, 230 Cal. App. 3d 416, 420–23 (1991)) ("There can be no civil liability under California law as the result of a justifiable homicide."). An officer has committed a "justifiable homicide" if the homicide was "necessarily committed in overcoming actual resistance to the execution of some legal process, or in the discharge of any other legal duty," or "necessarily committed in arresting persons charged with felony, and who are fleeing from justice or resisting such arrest." Cal. Pen. Code § 196.

Whether a homicide was justifiable depends on "whether the circumstances 'reasonably create[d] a fear of death or serious bodily harm to the officer or to another.'" *Martinez v. Cnty. of Los Angeles*, 47 Cal. App. 4th 334, 349 (1996) (quoting *Kortum v. Alkire*, 69 Cal. App. 3d 325, 333 (1977)) (some citations omitted). This analysis is substantively similar to the Fourth Amendment "reasonableness" analysis. *See Martinez*, 47 Cal. App. 4th at 349 (citing *People v. Rivera*, 8 Cal. App. 4th 1000, 1007 (1992) (using Fourth Amendment "reasonableness" analysis to determine that use of attack dog by officer was justified because officer "reasonably feared for his safety, and that of others in the area")).

### b.      Discussion

Here, because the City has provided no evidence to show that McNeely or other officers acted outside the scope of their employment, the City can be held vicariously liable under Section 815.2 for claims for which McNeely and other officers can be held liable. Accordingly, the Court finds that the City does not enjoy immunity from vicarious liability for state law claims based on the shooting, because there is a genuine question of fact as to whether McNeely's use of deadly force was reasonable.

However, the City does enjoy immunity from vicarious liability for state law claims based on post-arrest medical treatment, because there is not a genuine question of fact as to whether officers promptly summoned medical aid for Flenaugh and otherwise acted reasonably. *See Hernandez*, 2013 WL 4525640, at *11 (granting summary judgment for city on vicarious liability claims where officers alleged to have used excessive force were granted summary judgment, but

37

1   not on claims where officers were denied summary judgment).

2         Additionally, Plaintiffs have alleged no statutory basis for holding the City directly liable

3   in this case, and thus the City is immune from direct liability. *See Kelly v. Cnty. of Santa Clara*, C

4   04-03676 JW, 2005 WL 588569, at *4 (N.D. Cal. Feb. 15, 2005) (citing *Zelig*, dismissing

5   negligence claims asserted directly against county).

6   **V.       CONCLUSION**

7         Based on the foregoing, the Court DENIES Defendants' Motion as to the following claims:

8   (1) the Estate's 42 U.S.C. § 1983 claim against McNeely asserting a violation of the Fourth

9   Amendment based on McNeely's alleged use of excessive force in shooting Flenaugh; (2)

10  Mathews, Flenaugh Sr., and Kamarty's wrongful death claims against McNeely and, vicariously,

11  the City, based on McNeely's shooting of Flenaugh; (3) Plaintiffs' negligence claims against

12  McNeely and, vicariously, the City, based on McNeely's shooting of Flenaugh; (4) the Estate's

13  Bane Act claim against McNeely based on McNeely's shooting of Flenaugh; and (5) the Estate's

14  battery claim against McNeely based on McNeely's shooting of Flenaugh. The Court GRANTS

15  Defendants' Motion as to all other claims.

16        **IT IS SO ORDERED**.

17  Dated: November 14, 2013

18  _____

19  JOSEPH C. SPERO
    United States Magistrate Judge

20

21

22

23

24

25

26

27

28